Marc Hepworth
Charles Gershbaum
David Roth
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone:     (212) 545-1199
Facsimile:     (212) 532-3801
Marc@HGRlawyers.com

Shawn Khorrami
Robert J. Drexler, Jr.
Launa Adolph
**KHORRAMI POLLARD & ABIR LLP**
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071
Telephone:     (213) 596-6000
Facsimile:     (213) 596-6010
rdrexler@kpalawyers.com

*Attorneys for Plaintiff,*
*Martin Guillen*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARTIN GUILLEN, Individually and on behalf of all
others similarly situated,

                              Plaintiff.          Case No.: 09 CIV 9575


                    -against-


MARSHALLS OF MA, INC., a Delaware corporation;
MARMAXX OPERATING CORPORATION, d/b/a
MARMAXX GROUP, a Delaware Corporation; THE
TJX COMPANIES INC. a Delaware corporation, and
DOES 1 through 100, inclusive,

                              Defendants.


-----------------------------------------------------------------X

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CONDITIONAL
<u>CERTIFICATION OF A COLLECTIVE ACTION</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION……………………………………….……….……….....…..1

II.     PLAINTIFF'S BURDEN TO DEMONSTRATE THAT HE AND THE
        POTENTIAL OPT-IN PLAINTIFFS ARE "SIMILARLY SITUATED"
        IS MINIMAL……………………………………………………………………..3

        A.      Plaintiff Need Only Make a "Modest Factual Showing" that He
                and the Putative Class Members Are Similarly Situated…………………..…….3

        B.      A Detailed Inquiry into the Merits of Plaintiff's Claims Is
                Improper Prior to the Completion of Discovery……………………………..…….6

III.    PLAINTIFF PRESENTS SUFFICIENT EVIDENCE THAT HE AND
        THE POTENTIAL PLAINTIFFS ARE SIMILARLY SITUATED……………....…….8

        A.      Defendants' Discovery Responses Demonstrate Plaintiffs Are
                Similarly Situated……………………………………………………..………8

        B.      Defendants' Internal Documents Demonstrate Plaintiffs Are
                Similarly Situated……………………………………………………….……9

        C.      The Affidavits and Deposition Testimony of Plaintiff and Other
                ASMs Demonstrate Plaintiffs Are Similarly Situated……………….………..12

IV.     CONDITIONAL CERTIFICATION IS APPROPRIATE PURSUANT TO
        *INDERGIT V. RITE AID CORP*. DEFENDANTS' EVIDENCE……………………….15

V.      DEFENDANTS' EVIDENCE REGARDING PURPORTED VARIATIONS
        BETWEEN STORES DOES NOT DEFEAT CONDITIONAL
        CERTIFICATION………………………………………………………………….16

        A.      Plaintiff Need Only Show that his Position Is Similar, Not Identical,
                to the Positions Held by Other ASMs……………………..…………………..16

        B.      Defendants' Proffered Evidence Focuses on Largely Irrelevant
                Differences Between Members of the Putative Class…………..……………….18

        C.      Defendants' Affidavits from other Marshalls Employees Cannot
                Defeat Conditional Certification……………………..……………………………..20

        D.      This District Has Rejected Defendants' Cited Authority Denying
                Conditional Certification Where a Fact-Specific Inquiry is
                Required……………………………………………………………….……21

E.    Defendants Cannot Claim that a Determination Whether ASMs Were Properly Classified as Exempt Employees Requires an Individualized Inquiry Given Defendants' Uniform Classification of ASMs………………………………………………………….……………22

F.    Defendants' Claim that Its Potential Defenses Are Individualized Does Not Defeat Conditional Certification………………………………...………24

VI.    PLAINTIFF'S PROPOSED COLLECTIVE ACTION IS MANAGEABLE………..…..25

VII.    THE SCOPE AND MANNER OF PLAINTIFF'S PROPOSED NOTICE IS PROPER…………………………………………………..…………………………..26

A.    Notice Should Not Be Limited to the Stores at which Plaintiff Worked……………………………………………..…………………………26

B.    Plaintiff's Proposed Methodology for Facilitating Notice and Request for Contact Information for Potential Class Members Are Proper……………………………………………………….………………27

VIII.    CONCLUSION………………………………………………………………………29

## TABLE OF AUTHORITIES

### CASES

*Aguayo v. Oldenkamp Trucking*,
    U.S. Dist. LEXIS 22190 (E.D. Cal. Oct. 3, 2005)………………………………………..24

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
    648 F. Supp. 2d 484 (S.D.N.Y. 2009) …………………………………………………..28

*Amendola v. Bristol-Myers Squibb Co*.,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)………………………………………………………6

*Chowdhury v. Duane Reade, Inc.*,
    2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) …………………………passim

*Cohen v. Gerson Lehrman Group, Inc.*,
    686 F. Supp. 2d 317 (S.D.N.Y. 2010) …………………………………………………..3, 22

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
    595 F. Supp. 2d 200 (N.D.N.Y 2009) ………………………..……………………..5

*Damassia v. Duane Reade, Inc.*,
    2006 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) …………………………passim

*Davis v. Abercrombie & Fitch Co.*,
    2008 U.S. Dist. LEXIS 86577 (Oct. 22, 2008) ………………………..……………1, 4, 13

*Diaz v. Electronics Boutique of America, Inc.*,
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) …………………..……1, 21

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) …………………………………………..28

*Francis v. A&E Stores*,
    2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 15, 2008) …………..………………passim

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003) …………………………………..…………..5

*Holbrook v. Smith & Hawken, Ltd.*,
    2007 WL 2982239 (D.Conn. Oct. 11, 2007) ………………………………………..5

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265 (M.D. Ala. 2004) …………………………………….……..21

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ……………………………………………..2, 19

*Indergit v. Rite Aid Corp.*,
  2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010) …………….…………passim

*In re Visa Check/Mastermoney Antitrust Litig.*,
  280 F. 3d 124 (2d Cir. 2001) ……………………………………..……………..25

*Jacobsen v. Stop & Shop Supermarket Co.*,
  2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. 2003) …………………………………..6

*Jenson v. Eveleth Taconmit Co.*,
  139 F.R.D. 657 (D. Minn. 1991) …………………………………………………..21

*Kurihara v. Best Buy Co.*,
  2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007) ………………………………21

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ……………………………….…………..5

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ……………………………….……………..4, 5

*Lynch v. United Services Automobile Ass'n*,
  F. Supp. 2d 357 (S.D.N.Y. 2007) …………………………….……………..3

*Malloy v. Richard Fleishman & Assoc. Inc.*,
  2009 U.S. Dist. LEXIS 51780 (S.D.N.Y. June 3, 2009) ……………………...…………28

*Mascol v. E&L Transp., Inc.*,
  2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. June 29, 2005) ………………………………25

*Mike v. Safeco Ins. Co. of America*,
  274 F. Supp. 2d 216 (D. Conn. 2003) …………………………….…………..21

*Morden v. T-Mobile USA, Inc.*,
  2006 U.S. Dist. LEXIS 68696 (W.D. Wash. Sept. 12, 2006) ……………...……………21

*Moss v. Crawford & Co.*,
  201 F.R.D. 398 (W.D. Pa 2000)…………………………………………………..3

*Nerland v. Caribou Coffee Co.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007) ……………………….………………..22, 23

*Pacific Gas & Electric Co. v. Public Utilities Com.*,
   475 U.S. 1, 19 (1986) ……………………………………………………….…………..29

*Parks v. Dick's Sporting Goods Inc.*,
   2007 WL 913927 (W.D.N.Y. Mar. 23, 2007) ……………..………………………………..5

*Patton v. Thompson Corp.*,
   364 F. Supp. 2d 263 (E.D.N.Y. 2005) ……………………………..……………………..5

*Prizmic v. Armour, Inc.*,
   2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ……..……………………6, 7

*Ramirez v. Yosemite Water Co., Inc.*,
   20 Cal. 4th 785 (1999) …………………………………………………………………..24

*Realite v. Ark Rests. Corp.*,
   7 F. Supp. 2d 303 (S.D.N.Y. 1998) ………………………………….………………..6

*Ruggles v. WellPoint, Inc.*,
   591 F. Supp. 2d 150 (N.D.N.Y. 2008)……………………………………………………6

*Roebuck v. Hudson Valley Farms, Inc.*,
   239 F. Supp. 2d 234 (N.D.N.Y. 2002) …………………………………….…………..5

*Sav-on Drug Stores v. Superior Court*,
   34 Cal. 4th 319 (2004) ………………………………………………………………..24

*Scholtisek v. The Eldre Corp.*,
   229 F.R.D. 381 (W.D.N.Y. 2005) ……………………………………………………..6

*Sherrill v. Sutherland Global Servs.*,
   487 F. Supp. 2d 344 (W.D.N.Y. 2007) ………………………………..………………..28

*Summa v. Hofstra Univ.*,
   2010 U.S. Dist. LEXIS 53153 (E.D.N.Y. June 1, 2010)…………………………………5

*Thiessen v. General Electric Capital Corp.*,
   267 F.3d 1095, 1103 (10th Cir. 2001) ………………………………………………..24

*Tierno v. Rite Aid Corp.*,
   2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) …………….……………23, 25

*Toure v. Cent. Parking Sys.*,
   2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ………………….…………7

*Torres v. Gristede's Operating Corp.*,
   2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) ……………………………3, 5

*Wang v. Chinese Daily News, Inc.*,
   231 F.R.D. 602 (C.D. Cal. 2005)………………………………………….…………..23

*White v. MPW Industrial Services, Inc.*,
   236 F.R.D. 363 (E.D. Tenn. 2006)…………………………………….…………..10, 13

*Williams v. Twenty Ones, Inc.*,
   WL 2690734 (S.D.N.Y. June 30, 2008)………………………………………………..3, 4

*Willix v. Healthfirst, Inc.*,
   2009 U.S. Dist. LEXIS 114818 (E.D.N.Y. Dec. 3, 2009) ………………………………25

*Young v. Cooper Cameron Corp.*,
   229 F.R.D. 50 (S.D.N.Y. 2005)………………………………………...…………………..25

*Zivali v. AT&T Mobility LLC*,
   646 F. Supp. 2d 658 (S.D.N.Y. 2009)……………………….…………………..5, 12

## I.   INTRODUCTION

It is well-settled that, at this stage in the proceedings, courts apply a lenient standard to determine whether a plaintiff and the potential opt-ins are similarly situated.  In fact, a plaintiff can satisfy his minimal burden based on the pleadings and affidavits alone.  Here, Plaintiff presents substantial evidence, including Defendants' internal company documents, Plaintiff's affidavit and deposition testimony, and the affidavit and deposition testimony of other ASMs, demonstrating that Defendants exercised a great degree of control over Marshalls stores, thus making it "highly likely" that Plaintiff and the putative class members performed similar duties.  *See Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202, *17 (S.D.N.Y. June 15, 2010).  Plaintiff also presents evidence that Defendants engaged in a uniform practice of providing inadequate labor hours to each store, thus requiring all ASMs to perform non-exempt work.  Thus, Plaintiff has met his minimal burden to show he and other ASMs are similarly situated.

Defendants devote the majority of their Opposition to trying to establish purported factual variations between Marshalls stores.  Defendants then claim these alleged differences require an individualized inquiry.  However, this is not a proper basis on which to deny Plaintiff's motion for conditional certification.  This District has expressly rejected the line of cases cited by defendants in which the courts have denied conditional certification where a fact-specific inquiry is required.  *See Francis v. A&E Stores*, 2008 U.S. Dist. LEXIS 83369, *11, n.3 (S.D.N.Y. Oct. 15, 2008) (holding that *Diaz v. Electronics Boutique of America, Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) and "other[ cases] denying conditional certification where fact-specific inquiry might be required, [are] against the weight of authority in undertaking the analysis at the first stage of the certification process, rather than

evaluating at the decertification stage whether the need for individual analysis makes a collective action appropriate.")

Indeed, plaintiff need only show that his position is similar, not identical, to the positions held by other ASMs, and factual variations in employment settings will not defeat certification. Furthermore, Defendants' evidence regarding purported factual differences focuses on mostly irrelevant factors, and Defendants fail to explain how these alleged variations precludes a finding that Plaintiff and the potential opt-in plaintiffs are similarly situated.

Defendants' proferred declarations from other ASMs and non-exempt coordinators also fail to defeat conditional certification. To the extent such evidence is presented to show that all ASMs were properly classified as exempt, this argument relates to the merits of Plaintiff's claims and is premature. Moreover, this Court should discount the value of the declarations, all of which are from current employees, because of the inherent risk of bias and coercion and Plaintiff has not yet had an opportunity to depose these individuals.

Furthermore, Defendants should not be permitted to argue that a detailed factual analysis is required to determine whether ASMs are properly classified as exempt given that Defendants uniformly classified all ASMs without regard to any of the purported factual variations.

Thus, based on the substantial evidence submitted by Plaintiff including Defendants' internal company documents, Defendants' discovery responses, Plaintiff's affidavit and deposition testimony and the affidavit and deposition testimony of other ASMs, Plaintiff has satisfied his minimal burden to demonstrate he and the potential opt-in plaintiffs are similarly

situated.  Accordingly, Plaintiff respectfully requests this Court grant Plaintiff's motion and authorize Notice be sent to the potential plaintiffs.

## II.  PLAINTIFF'S BURDEN TO DEMONSTRATE THAT HE AND THE POTENTIAL OPT-IN PLAINTIFFS ARE "SIMILARLY SITUATED" IS MINIMAL.

### A.  Plaintiff Need Only Make a "Modest Factual Showing" that He and the Putative Class Members Are Similarly Situated.

At this first phase of the two-phase inquiry, the court makes a preliminary determination *based on the plaintiff's pleadings and affidavits* whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs.  *Lynch v. United Services Automobile Ass'n*, F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007); *see also Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (granting conditional certification where "plaintiffs rel[ied], as they [were] entitled to do at this stage of the proceedings, on the pleadings and their own declarations.").  At this juncture, "the court applies 'a fairly lenient standard' and… typically grants 'conditional certification.'"  *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, *37-38 (S.D.N.Y. Sept. 28, 2006) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa 2000)); *see also Cohen v. Gerson Lehrman Group, Inc*., 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (noting there is a "low bar for allegations required for collective action certification.").

Indeed, the law in the Second Circuit is clear and incontrovertible that, at this stage in the proceedings, plaintiff's burden of proof for conditional certification is extremely low.  In a decision by the Honorable Loretta A. Preska in *Williams v. Twenty Ones, Inc.*, WL 2690734 (S.D.N.Y. June 30, 2008)[1], the court "adopt[ed] the legal standard set forth in Damassia v.

---

[1] In *Williams,* the plaintiffs brought an action under the FLSA and New York law alleging that they were not paid overtime.  The court held that plaintiffs' affidavits were sufficient to support

Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) for making the limited 'preliminary determination' as to whether potential opt-in plaintiffs are sufficiently 'similalry situated' to the named plaintiffs to justify certifying this case as a collective action under the FLSA, Section 216(b)." *Id.* at *1. The court held:

> Plaintiffs' burden at this stage of the litigation is "minimal" and "very lenient." The inquiry is simply whether the plaintiffs have made a "modest factual showing" that these named plaintiffs and the other potential plaintiffs were "victims of a common policy or plan violating FLSA." Plaintiffs have more than carried this burden.

*Id.*

The required "modest factual showing" that plaintiff and the other putative collective action members "were victims of a common policy or plan that violated the law" can be satisfied with "substantial allegations" of a factual nexus between the named plaintiff and the potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. *Davis v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 86577, *27 (Oct. 22, 2008).

Defendants' attempt to factually distinguish the cases cited by Plaintiff establishing the lenient standard employed by courts when ruling on a motion for conditional certification is unavailing as countless cases, including many store manager misclassification cases, set forth this liberal standard. Indeed, it is well-established that a plaintiff's burden to demonstrate others are similarly situated, at this stage, is minimal. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); *Indergit*, 2010 U.S. Dist. LEXIS 73853, at *3; *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73853, *3 (S.D.N.Y. Oct. 2, 2007).

---

conditional certification and that defendants' arguments to the affidavits were entirely fact-intensive, merit-based arguments. *Williams*, 2008 WL 2690734, at *1-2. The court found it would be "better equipped at that time to assess the force of this argument after discovery has been completed, during the second, 'more heightened' stage of FLSA scrutiny." *Id.* at *2.

In addition, factual variations between employees, such as positions, job functions, work locations, dates of employment and hours worked will not defeat a finding that employees are similarly situated. *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y 2009) (holding that a putative class which involved a variety of diverse positions did not undermine conditional certification since "under section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations"); *Summa v. Hofstra Univ.*, 2010 U.S. Dist. LEXIS 53153, *35 (E.D.N.Y. June 1, 2010) (holding that variations in positions and job functions do not, at the conditional certification stage, prevent a finding that plaintiffs are similarly situated); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *30 (finding that "issues related to potential disparate factual and employment settings do not defeat Plaintiffs' valid basis for moving forward with [a] collective action.").

Pursuant to this liberal standard, courts in this Circuit have routinely granted conditional certification and authorized notice in FLSA collective actions. *See, e.g., Indergit*, 2010 U.S. Dist. LEXIS 60202 (store managers); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658 (S.D.N.Y. 2009) (assistant store managers); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008)*; Parks v. Dick's Sporting Goods Inc.*, 2007 WL 913927 (W.D.N.Y. Mar. 23, 2007); *Holbrook v. Smith & Hawken, Ltd.*, 2007 WL 2982239 (D.Conn. Oct. 11, 2007) (assistant store managers); *Francis*, 2008 U.S. Dist. LEXIS 83369 (assistant store managers); *Chowdhury v. Duane Reade, Inc.*, 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) (assistant store managers); *Damassia*, 2006 U.S. Dist. LEXIS 73090 (assistant store managers); *Torres*, 2006 U.S. Dist. LEXIS 74039; *Lee*, 236 F.R.D. at 197; *Patton v. Thompson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y.

2002); *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005); *Jacobsen v. Stop & Shop Supermarket Co.*, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. 2003); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

> **B.** **A Detailed Inquiry into the Merits of Plaintiff's Claims Is Improper Prior to the Completion of Discovery.**

The law in the Second Circuit is clear, "Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action." *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *11 (citing *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, *2 (E.D.N.Y. June 12, 2006)).

Relying on *Amendola v. Bristol-Myers Squibb Co*., 558 F. Supp. 2d 459 (S.D.N.Y. 2008), Defendants suggest this Court may conduct a more detailed inquiry delving into the merits of Plaintiff's claim in determining whether notice should be issued.  (Opp., p. 17.)  However, *Amendola* is not only contrary to case law in this District but is distinguishable from the instant case.  *See Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 (N.D.N.Y. 2008) (finding *Amendola* "contrary to precedent").  In *Amendola*, prior to ruling on plaintiff's motion for authorization of notice to the potential class members, the court ordered defendant to provide plaintiff with the names of employees randomly selected from each business unit, geographic region and job level, resulting in defendant providing the names and addresses of 350 employees. *Amendola*, 558 F. Supp. 2d at 462.  Defendant also produced more than 6,000 documents and, in response to plaintiff's Rule 30(b)(6) deposition notice, produced five witnesses for deposition. *Id*.  Following such extensive discovery, the court determined closer scrutiny of the merits of plaintiff's claims was warranted.  *Amendola*, 558 F. Supp. 2d at 467, n.9.

Courts have consistently held that it is inappropriate to conduct a more detailed inquiry into the merits before discovery has been completed.  *See Chowdhury*, U.S. Dist. LEXIS 73853, at*10 (finding defendants "provide[d] no authority for their contention that there should *ever* be a 'detailed' factual analysis in a pre-discovery § 216(b) determination") (emphasis in original); *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *12 (holding that, where plaintiff had not yet deposed any of the individuals who submitted declarations on behalf of defendant, "[i]t would be inappropriate to make more than a 'preliminary determination'… or to require plaintiffs to meet a more stringent standard than typically applied to the early stages of litigation."); *Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) (holding that because "only limited fact discovery was conducted prior to the filing of [the] motion, ... the collective action [should be evaluated] pursuant to the 'less stringent' standard applicable at the outset of the litigation."); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *26, n. 8; *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, *2.

Where, as here, discovery is still in the early stages, a more detailed look at the merits of Plaintiff's claims is inappropriate.  While Defendants have taken Plaintiff's deposition, as well as the depositions of the plaintiffs in *Archibald, et al. v. Marshalls of MA, Inc., et al.*, Case No. 1:09-cv-2323 (LAP), which has been consolidated with this action for pre-trial purposes, Plaintiff has not yet taken the deposition of Defendants' witness(es) pursuant to Federal Rule of Civil Procedure, Rule 30(b)(6).  *See* Supplemental Affirmation of Marc S. Hepworth ("Hepworth Supp. Affm."), ¶¶ 2-3.  Plaintiff also has not taken the depositions of any of the persons who submitted declarations in support of Defendants' Opposition to the Motion for Conditional Certification.  *Id*. at ¶ 3.  The deadline to complete discovery relating to class certification in this action and *Archibald* is September 15, 2010.  *Id*. at ¶ 4.

Given the early stages of this litigation, Plaintiff need only make a "modest factual showing" that Plaintiff and the potential opt-in plaintiffs are similarly situated.

## III.   PLAINTIFF PRESENTS SUFFICIENT EVIDENCE THAT HE AND THE POTENTIAL PLAINTIFFS ARE SIMILARLY SITUATED.

In their Opposition, Defendants argue Plaintiff fails to provide "any evidence beyond anecdotal, template declarations from a few ASMs regarding their individual work experiences at only a handful of stores."  (Opp., p. 2.)  However, an examination of the record clearly belies such a representation.  The record contains substantial evidence supporting Plaintiff's claims including Defendants' internal documents, such as the Management Training Guide, the uniform job descriptions, the Guide to Store Management's and Coordinators' Duties and Responsibilities (attached to the Affidavit of Maryann Parizo, Docket No. 22, as Exh. "3A"), a uniform exemption policy, and Defendants' organizational structure chart.  Plaintiff has also presented his affidavit and deposition testimony and the affidavit and deposition testimony of other ASMs.  This evidence demonstrates that Plaintiff and the potential opt-in plaintiffs are similarly situated for purposes of conditional certification.

### A.   Defendants' Discovery Responses Demonstrate Plaintiffs Are Similarly Situated

A defendant's concession that its business practices are uniform among its stores and that it applies the "bona fide executive" exemption to all employees can support a motion for conditional certification.  *See Damassia*, 2006 U.S. Dist. LEXIS 73090, at *14; *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *4 ("plaintiff's affidavits and allegations, taken together with defendants' admissions, 'more than suffice' to entitle plaintiff to court-authorized notice"); *Francis*, 2008 U.S. Dist. LEXIS 83369, at *7 (finding plaintiff was similarly situated where defendant's vice-president of store operations testified the duties of ASMs were "more or less"

the same at all stores).   Here, Defendant concedes through its discovery responses that its relevant business practices were uniform amongst stores and that it classified all ASMs as exempt.

In response to Plaintiff's discovery requests, including requests to produce "any and all operation manuals used by Marshalls," "any and all training materials used by Marshalls," "any and all documents concerning the job description . . . of Assistant Store Manager offered at Marshalls," and "any and all Documents concerning the job duties of Assistant Store Managers," Defendants produced the same documents for every Marshalls ASM throughout the United States.   *See* Hepworth Supp. Affm., ¶ 5.   Additionally, when requested to produce information and documentation that all ASMs are classified as exempt, Defendants admit that all ASMs are classified as exempt.   See Hepworth Supp. Affm., Exh. 2 (Defendants' Answers to Plaintiffs' First Set of Interrogatories), Response to Interrogatory No. 11.   At no point, in any of their responses, do Defendants put forth any relevant distinction between ASMs, whether it be by region, district, state, city, town or location.   As such, these responses, including the documents produced, demonstrate that Plaintiff and other ASMs are similarly situated.   The fact that Plaintiff has not yet taken the deposition of Defendants' corporate designees, as in *Damassia*, *Chowdhury* and *Francis*, does not detract from this showing.

### B.      Defendants' Internal Documents Demonstrate Plaintiffs Are Similarly Situated.

Where defendant's internal company documents demonstrate that defendant exercised a great degree of control over the operation of retail branches, it is "highly likely" that employees within the same job description performed similar duties.   *See Indergit*, 2010 U.S. Dist. LEXIS 60202, at *17.   In *Indergit v. Rite Aid Corp.*, the court found that defendant's internal documents indicated that store managers were officially assigned a similar set of duties by defendant's

corporate headquarters.  *Id*. at *16.   Defendant's "Store Management Guide" delineated in great detail how store managers should complete a variety of weekly tasks.  *Id*. at *16-17. Additionally, defendant's nationwide job descriptions for the store manager position indicated that all store managers across the country had the same set of duties and that the decision to classify store managers as exempt was made at the national level.  *See id*. at *18.  Thus, the court concluded that plaintiff, through affidavits and defendant's internal corporate documents, had met his "minimal burden" of demonstrating that he and other store managers were similarly situated, that they performed similar duties, and that they had been subjected to an allegedly unlawful nationwide corporate policy of denying overtime compensation to the store managers. *Id*. at *16.

In support of his motion for conditional certification, Plaintiff submitted Defendants' internal company documents, including the Management Training Guide, Defendants' uniform job descriptions for ASMs, and Defendants' corporate hierarchy structure, all of which are applicable to ASMs nationwide.  *Id*. at *16.   Additionally, Defendants' Overtime Policy demonstrates that Defendants classify all ASMs outside California as exempt.  *See* Supplemental Affirmation of Marc S. Hepworth ("Hepworth Supp. Affm."), Exh. "1" (Overtime Pay Policy) (non-exempt associates and non-exempt managers in California only eligible for overtime compensation).[2]

As in *Indergit*, Defendants' nationwide job descriptions indicate that all ASMs across the country have the same set of duties.  *See* Affidavit of Zobedya Morales ("Morales Aff.") (attached to the Affirmation of Marc S. Hepworth ("Hepworth Affm."), Docket No. 18, as Exh. "3"), Exh. "A", pp. 13-15 (Management Training Program: Assistant Manager – Merchandising

---

[2] Notably, Defendants do not dispute that all ASMs outside California were classified as exempt. *See generally* Opp.

Job Description and Management Training Program: Assistant Manager – Operations Job Description); Affidavit of Nicole Archibald ("Archibald Aff.") (attached to Hepworth Affm. as Exh. "2"), Exh. "A", p. 8 (Management Responsibilities); Affidavit of Lady Diana Santillian ("Santillian Aff.") (attached to Hepworth Affm. as Exh. "5"), Exh. "A", p. 8 (Management Responsibilities); *see also* Def. Exh. 2.  Additionally, the Overtime Pay Policy indicates that the decision to classify ASMs as exempt was made at the national level.  *See* Hepworth Supp. Affm., Exh. "1".  Finally, Defendants' Management Training Guide provides detailed instructions on how to complete a wide variety of tasks.  *See, e.g.*, Archibald Aff., Exh. "A", pp. 29, 31, 33, 38-39, 41-43, 45, 59, 67, 94-95; Morales Aff., Exh. "A", pp.  50, 52-53, 55-56, 60-61, 78, 82-84, 86; Santillian Aff., Exh. "A", pp. 29, 31, 33, 38-39, 41-43, 45, 59, 67, 94-95 (Management Training Program sections detailing (1) procedures for opening and closing the store, (2) fitting room policies and procedures, (3) maintenance policies and procedures, (4) backroom organization policies and procedures, (5) delivery truck policies and procedures (6) merchandise policies and procedures (7) markdown policies and procedures, (8) front line "registers" policies and procedures, (9) service desk policies and procedures, and (10) layaway policies and procedures); *see also* Def. Exh. M1-M5.  These documents demonstrate that Defendants' corporate management exercises a great degree of control over the operation of their stores which makes it "highly likely" that all ASMs, regardless of their location, perform similar duties.  *See Indergit*, 2010 U.S. Dist. LEXIS 60202, at *17.

C.   **The Affidavits and Deposition Testimony of Plaintiff and Other ASMs Demonstrate Plaintiffs Are Similarly Situated.**

A plaintiff can make the factual showing necessary to support conditional certification through plaintiff's assertions and deposition testimony.  *See Francis*, 2008 U.S. Dist. LEXIS 83369, at \*10, n. 2.  In fact, a plaintiff's own deposition testimony may be sufficient to support conditional certification.  *See Zivali*, 646 F. Supp. 2d at 662-663.

In *Zivali v. AT&T Mobility*, defendants argued that plaintiffs' declarations were comprised of "idiosyncratic, unrepresentative, and conclusory allegations based on impermissible hearsay."  *Id.* at 662.  Noting the "relatively permissive" standard governing the factual basis for certification where a motion is brought before discovery has commenced in earnest, the court found that plaintiffs' factual showing was not based solely on plaintiffs' assertions, but rather was sufficiently made out through deposition testimony.  *Id.*  The court found that through the course of the depositions, each plaintiff had further substantiated his or her allegations, while also expressing the belief, established through conversations with similarly situated colleagues, that other employees suffered the same underpayment.  *Id.* at 662-663.  Thus, "[plaintiffs'] declarations and depositions, taken together, [were] more than sufficient to demonstrate the particularized personal knowledge required to make 'substantial allegations' in support of class certification."  *Id.* at 663.

Here, Plaintiff's motion is supported by his affidavit and deposition testimony, as well as the affidavit and deposition testimony of other ASMs.  Through their declarations and deposition testimony, Plaintiff and the other affiants affirm that they spoke to and observed colleagues

suffering through the same circumstances.[3]  Furthermore, Plaintiff and the affiants attest that they were subject to the same policies and practices as other ASMs, and thus Plaintiff and the putative class members are similarly situated.

Plaintiff's affidavit and the affidavits of other ASMs establish that they worked in excess of 40 hours per week and did not receive overtime compensation.  *See* Plaintiff's Affidavits (attached to Hepworth Affm. as Exhs. "2"-"5"), ¶¶ 3-4.  The affidavits also establish that Plaintiff and the other ASMs performed similar job functions and received similar training.  *See id*. at ¶¶ 6, 10-11.[4]

Furthermore, Plaintiff's deposition testimony and the deposition testimony of other ASMs demonstrate that Plaintiff's claims are based on a uniform policy which has resulted in all ASMs being misclassified as exempt.  Defendants mischaracterize Plaintiff's testimony asserting that Plaintiff was not able to perform supervisory functions because his store manager did not allow him to do so.  (*See* Opp., p. 1.)  However, as evidenced by Plaintiff's deposition testimony, Plaintiff contends that he was not able to perform managerial functions due to a shortage of labor

---

[3] Defendants argue that Plaintiff cannot make the requisite showing that he is similarly situated to other ASMs because he lacks personal knowledge regarding the way stores outside of New York operate.  However, Plaintiff is not required to have detailed personal knowledge of every aspect of company policy.  Moreover, courts have found that it is "reasonable to infer from the evidence submitted that ... [the affiant], as [an employee of defendant], would have learned during the normal course of [his] employment how the company operates and what the company's policies were."  *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363 (E.D. Tenn. 2006) (citations omitted).

[4] Defendants attack the affidavits submitted by Zobeyda Morales and Lady Diana Santillian, both former ASMs in New York, claiming Morales and Santillian "regularly noted their personal managerial accomplishments in the self-evaluation section of their performance reviews" and therefore their testimony in their affidavits that they had little or no managerial responsibility "is simply not credible."  (Opp., pp. 13, 19.)  However, at the stage of evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations."  *Davis*, 2008 U.S. Dist. LEXIS 86577, at *27-28.  As such, Defendants' attacks on the Morales and Santillian affidavits cannot defeat conditional certification of the collective action.

hours allocated to his store by Defendants.  *See* Hepworth Supp. Affm., Exh. "2" ("Guillen Depo."), 39: 7-20 ("There wasn't enough labor given to us[.]"); 53: 13-22 (testifying he complained to the District Manager "[r]egarding the shortage of staff"); 259: 2-13 (testifying that "most of the time I was on the sales floor performing the associates' duties" due to lack of adequate staffing); 328: 7- 329: 8 (stating that he had to perform non-managerial work because "there was nobody else to do it."); 371: 7-12 (testifying he had to clean the bathrooms in the store because "there was no associate to do that."); 408: 20- 409: 1 (stating that there was not enough payroll to pay the number of associates that needed to be in the store on Thursdays, Fridays, Saturdays and Sundays).  The labor budgets were set by Defendants, and the stores were required to adhere to the budgets.  *See id*. at 55: 14-17 ("[W]e had a budget that we had to follow that was set by the company.").

The deposition testimony of other ASMs confirms that Defendants' practice of providing inadequate labor hours to each store, thus requiring ASMs to perform non-exempt work, is a uniform practice.  *See* Hepworth Supp. Affm., Exh. "3" ("Archibald Depo."), 340: 18- 341: 2 (testifying she spoke with other ASMs regarding the need to cut staffing levels due to payroll issues); 426: 1-6 (testifying she performed tasks including working at the cash register and in the stock room and cleaning the store because there were not enough associates to perform the work "because [the company was] trimming overtime"); Hepworth Supp. Affm., Exh. "4" ("Ogaian Depo."), 284: 6- 285: 20 (testifying she rang up customers, processed shipment and cleaned bathrooms due to insufficient payroll).  Other ASMs also confirm that they were required to adhere to payroll budgets set by Defendants.  *See* Archibald Depo., 428: 20- 429: 7 (stating she did not have any control over increasing or decreasing the amount of payroll allocated to the store).

Plaintiff's affidavits and deposition testimony thus establishes that Plaintiff and the proposed opt-in plaintiffs were subject to uniform practices and policies and, therefore, are similarly situated.

## IV. CONDITIONAL CERTIFICATION IS APPROPRIATE PURSUANT TO *INDERGIT V. RITE AID CORP.*

The court's recent decision *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 compels certification of the instant matter.  In *Indergit*, plaintiff brought a claim against his employer alleging that Rite Aid had misclassified him and other store managers as exempt executives and, as a result thereof, had failed to pay them overtime wages in violation of the FLSA.  *Id.* at *5-6.  Plaintiff did not claim that Rite Aid's job descriptions were unlawful on their face, but rather that Rite Aid had a policy of requiring its store managers to work overtime to perform the duties of non-exempt employees.  *Id.* at *6.  Plaintiff alleged that all store managers were victims of a common national Rite Aid policy because "all policies which relate[d] to the individual stores and management [were] produced on a national level with oversight from District and Regional management."  *Id.* at *8.

The court found that, through affidavits and internal corporate documents, plaintiff met his minimal burden of demonstrating that plaintiff and other Rite Aid store managers were similarly situated.  *Id.* at *16.  The court found that Rite Aid's internal documents, including its nationwide job descriptions and its "Store Management Guide", demonstrated that Rite Aid's corporate management exercised a great degree of control over the operation of retail branches. *Id.* at *17-18.  Thus, according to the court, it was "highly likely" that Rite Aid store managers performed similar duties.  *Id.* at *17.

In addition to the corporate documentation, the court found plaintiff's affidavit and those of other store managers demonstrated they were similarly situated.  *Id.* at *21.  In the affidavits,

plaintiff and his co-workers alleged they were victims of a corporate-wide policy that left store managers with fewer overtime hours in their labor budget than was necessary and forced them to perform mainly non-exempt duties. *Id*. at \*22-23. The court concluded, "In light of the low standard of proof applicable to this inquiry, Rite Aid's internal documents, the affidavits and the allegations in the complaints [were] sufficient to warrant court-authorized notice." *Id*. at \*23.

Here, as in *Indergit*, Plaintiff has presented affidavits and internal corporate documents demonstrating that he and the potential opt-in plaintiffs are similarly situated. As discussed above, Defendants' corporate documents, including the Management Training Guide, the job descriptions, the corporate hierarchy and Defendants' exemption policy, demonstrate that Defendants exercised a great degree of control over their retail branches. Additionally, through their affidavits and deposition testimony, Plaintiff and other ASMs allege they were forced to perform non-exempt duties as a result of a company-wide policy of providing insufficient labor hours to the retail stores. Thus, pursuant to *Indergit*, conditional certification should be granted.[5]

## V.   DEFENDANTS' EVIDENCE REGARDING PURPORTED VARIATIONS BETWEEN STORES DOES NOT DEFEAT CONDITIONAL CERTIFICATION.

### A.   Plaintiff Need Only Show that his Position Is Similar, Not Identical, to the Positions Held by Other ASMs.

Defendants devote the majority of their Opposition to trying to establish purported differences in the way Marshalls stores operate, including (1) store volume; (2) employee head count; (3) store location; (4) store size; (5) back room variances; (6) cleaning; (7) number of

---

[5] Defendants attempt to distinguish this action from *Indergit*, claiming that "Marshalls Stores do not use 'planograms' and are in many ways different from one another." (Opp., p. 31.) However, the court's decision in *Indergit* clearly was not dependent on the fact that Rite Aid stores utilized planograms. In fact, the entire opinion contains only one reference to Rite Aid's use of planograms. *See Indergit*, 2010 U.S. Dist. LEXIS 60202, at \*16-17. Rather, Rite Aid's use of planograms was just one piece of evidence supporting the court's finding that Rite Aid's corporate management exercised a great degree of control over the operation of retail branches. *See id*.

entrances; and (8) the existence or non-existence of overnight crews.  (Opp., p. 23.)  Defendants also submit evidence which purportedly demonstrates that differences exist related to stores' customer base and the frequency and manner of merchandise deliveries.  (*Id*. at pp. 23-24.) Defendants claim these purported differences necessitate an individualized inquiry.  However, this argument has been repeatedly rejected by courts.

It is well-established that in the context of a § 216(b) motion, a plaintiff needs to show only that his position is "'similar, not identical, to the positions held by the putative class members'" and that any factual variations which may exist will not defeat conditional certification.  *See Francis*, 2008 U.S. Dist. LEXIS 83369, at *8 (quoting *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *3).  In *Damassia*, defendant pointed to evidence in plaintiffs' deposition testimony that trucks made deliveries during some of plaintiffs' shifts but not during other plaintiffs' shifts; that some plaintiffs' had the authority to arrange store displays, while others did not; and that there was variation among the stores at which plaintiffs worked with respect to the stores' locations, their layout, their hours of operation, the amount of customer traffic, and the frequency with which outside cleaning crews visited the store.  *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *20-21.  According to the court, "[s]uch differences are hardly relevant to whether plaintiffs and potential opt-in plaintiffs were common victims of an illegal application of the 'bona fide executive' exemption to overtime compensation requirements."  *Id*. at *21.  On this logic, the court found, "no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele."  *Id*.

Similarly, in *Indergit*, defendant argued that plaintiff's deposition testimony and that of the other store managers revealed that their daily duties were different, and accordingly, the store

managers were not similarly situated. *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *28. Defendant contended that store managers' duties varied because of the "unique characteristics of each store", including store size and sales volume, total number of employees to be managed, each store's hours of operation, amount of customer traffic, nature of the store's clientele, number of truck deliveries, whether the store employed a cleaning crew, and physical differences of stores, such as whether the store had a loading dock. *Id*. at *28-29. However, the court found, "[t]hat these factors var[ied] from store to store provide[d] no basis for denying [plaintiff's] motion." *Id*. at 29. Indeed, as the court noted, "[plaintiff] is not required to demonstrate at this early stage that his duties were identical to those of other store managers." *Id*. at *30.

Rather, disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of the analysis. *Francis*, 2008 U.S. Dist. LEXIS 83369, at *11. As the court in *Chowdhury* noted, "[A]t most, defendant[s]' attacks on plaintiff['s] affidavits and other evidence raise questions as to whether plaintiff[] could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery." *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *4 (citing *Damassia*, 2006 U.S. Dist. LEXIS 73853, at *5).

Accordingly, Defendants' evidence regarding the purported variations in Marshalls stores does not preclude a finding that Plaintiff and other ASMs are similarly situated.

**B.    Defendants' Proffered Evidence Focuses on Largely Irrelevant Differences Between Members of the Putative Class.**

The evidence Defendants present in an attempt to create factual variations focuses mostly on irrelevant differences between Plaintiff and the opt-in plaintiffs. The proper inquiry in a Section 216(b) determination is whether plaintiffs are similarly situated with respect to their allegations that the law has been violated, and not whether plaintiffs' job responsibilities are

identical in every possible respect.  *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *5. Defendants cannot defeat a Section 216(b) motion simply by pointing out all the ways in which Plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead Defendants must show that Plaintiff and other ASMs are not similarly situated in ways relevant to their entitlement to overtime compensation under the FLSA.  *See id*.

In *Chowdhury*, the court noted that defendants claimed that the deposition testimony proved wide variances in the specific tasks performed by assistant store managers at each store. *Id*.  The court found that "[s]uch facts, even if true, d[id] not undermine [the] claim that they are similarly situated with respect to their allegations that defendant[s'] company-wide compensation policies violate FLSA's overtime requirements."  *Id*. (quoting *Damassia*, 2006 U.S. Dist. LEXIS 73853, at *6).

Here, Defendants claim that a number of purported differences in the way Marshalls stores operate require an individualized inquiry.  However, Defendants fail to explain how purported variations such as the number of deliveries a store receives or the size and location of a store's stockroom preclude a finding that Plaintiff and the potential plaintiffs are similarly situated.  As such, these purported differences cannot defeat conditional certification.

Defendants also argue that conditional certification is not proper because, according to Defendants, Operations ASMs and Merchandise ASMs have different responsibilities.  (Opp., p. 22.)  Such purported differences cannot, at this stage, defeat certification given that Defendants have failed to make a showing that such purported differences are relevant to a determination whether Operations ASMs and Merchandise ASMs are similarly situated.  Furthermore, to the extent the court determines at the second phase of the inquiry that meaningful differences exist

between the different classifications of ASMs, the court can create subclasses at that time.  *See Iglesias-Mendoza*, 239 F.R.D. at 369.

Accordingly, at this stage of the proceedings, the alleged differences between ASMs fail to prevent a finding that Plaintiff and the potential opt-in plaintiffs are similarly situated.

### C.   Defendants' Affidavits from other Marshalls Employees Cannot Defeat Conditional Certification.

In support of its Opposition, Defendants submit declarations from other ASMs at Marshalls stores in New York who claim they spend the majority of their time performing managerial and supervisory tasks, as well as declarations from non-exempt coordinators who claim ASMs in their stores regularly supervised and directed them in their work.  These declarations cannot defeat conditional certification of Plaintiff's claims.

To the extent Defendants present these declarations as evidence that all ASMs perform management duties, such an argument relates to the merits of Plaintiff's claims and therefore is premature.  *See Damassia*, 2006 U.S. Dist. LEXIS 73090, at *24 (finding that to the extent defendant presented affidavits from other assistant managers as evidence that all assistant managers exercised substantial management responsibilities, defendant not only was making a premature argument on the merits but appeared to be conceding that plaintiffs and other assistant mangers were similarly situated).

Moreover, the evidentiary value of Defendants' declarations is "sharply limited" by the fact that Plaintiff has not yet had an opportunity to depose any of the declarants.  *See id*. at *24-25.  As the court noted in *Damassia*, "[g]iven that the Court must be 'lenient' in deciding whether plaintiff has met its 'minimal' burden at this stage, untested evidence such as affidavits submitted by defendant cannot… defeat [P]laintiff['s] entitlement to a preliminary determination that [he is] similarly situated to other [ASMs]."  *Id*. at *25; *see also Francis*, 2008 U.S. Dist.

LEXIS 83369, at *8-9 (discounting store manager affidavits submitted by defendant at conditional certification stage for proposition that ASM duties were variable).

Furthermore, the Court should discount Defendants' declarations, all of which are from current employees, because of the risk of bias and coercion inherent in that testimony. *See Morden v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 68696, at *3 (W.D. Wash. Sept. 12, 2006); *Jenson v. Eveleth Taconmit Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991); *see also Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, *29-30 (N.D. Cal. Aug. 29, 2007) (finding that "defendant's 'litigation-driven,' selective sampling of employees and other data are insufficient to inject fatal uncertainty into the question of liability.").

Accordingly, Defendants' proferred declarations cannot defeat conditional certification of Plaintiff's collective action.

### D.   This District Has Rejected Defendants' Cited Authority Denying Conditional Certification Where a Fact-Specific Inquiry is Required.

Defendants rely on a series of cases, including *Diaz v. Electronics Boutique of America, Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005), *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216 (D. Conn. 2003), and *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004), in which courts have denied conditional certification finding that, in deciding plaintiffs' claims, the courts would have to conduct a detailed factual analysis of the class members' daily activities and responsibilities. *See Diaz*, 2005 U.S. Dist. LEXIS 30382, at *13; *Mike*, 274 F. Supp. 2d at 220-221; *Holt*, 333 F. Supp. 2d at 1274. However, this District has rejected the reasoning applied in these cases.

As this District has found, "[*Diaz*] and other[ cases] denying conditional certification where fact-specific inquiry might be required, [are] against the weight of authority in undertaking the analysis at the first stage of the certification process, rather than evaluating at the

decertification stage whether the need for individual analysis makes a collective action appropriate." *Francis*, 2008 U.S. Dist. LEXIS 83369, at *11, n. 3; *see also Cohen*, 686 F. Supp. 2d at 329 (noting that courts in this District weighing motions for preliminary FLSA certification have rejected the reasoning in line of cases denying preliminary certification based on fact-intensive nature of inquiry, including *Diaz* and *Holt*); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *27, n. 9 ("The approach adopted in *Holt* has been rejected by district courts in this Circuit and will not be followed here.")  As such, Defendants' cited authority fails to defeat conditional certification of the class.

### E.    Defendants Cannot Claim that a Determination Whether ASMs Were Properly Classified as Exempt Employees Requires an Individualized Inquiry Given Defendants' Uniform Classification of ASMs.

Defendants assert that determining whether an employee is exempt is an individual and fact-intensive inquiry requiring an analysis of the employee's job duties and responsibilities and the time spent performing managerial duties.  (Opp., p. 18.)  However, Defendants should not be permitted to argue that a determination whether ASMs were properly classified as exempt employees cannot be made on a classwide basis as Defendants uniformly classified all ASMs as exempt from overtime regulations.

In *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010 (D. Minn. 2007), the court found that "just as defendant was able to determine on a collective basis that all of its store managers were employed 'in a bona fide executive... capacity,' so, too, this Court can determine on a collective basis whether defendant's decision was correct."  *Id*. at 1014 (adopting magistrate's recommendation denying motion for decertification under the FLSA finding that "common notions of equity and fairness strongly counsel[ed] a determination... that plaintiffs [were] similarly situated for purposes of collectively pursuing their legal claims challenging the

propriety of [defendant's] application of the executive exemption" given defendant's internal company policy to utilize an "all or nothing" approach to the exemption analysis regarding its store managers.)  Defendants attempt to distinguish *Nerland* claiming that *Nerland* did not focus exclusively on the uniform classification of managers as exempt.  (Opp., p. 27.)  However, this fact does not detract from the inequity and inconsistency inherent in Defendants' attempt to argue that an individualized inquiry precludes certification while at the same time maintaining a policy of classifying all ASMs as exempt without regard to any purported variations in job duties or employment settings.  Furthermore, Plaintiff need not make the same factual showing as in *Nerland* because *Nerland* involved a motion for decertification, which is subject to a heightened level of scrutiny.

Other courts have also rejected defendants' arguments that an individualized inquiry into each employee's job duties was required where defendant uniformly classified all employees as exempt.  In *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794, (N.D. Cal. Aug. 31, 2006), the court found that defendant's contention that each store manager position must be individually assessed to determine whether the position could be categorized as exempt or non-exempt "[rang] hollow" given that defendant had always "categorically classified all Store Managers as exempt employees without exception and without regard to store size, location, sales levels, staffing levels or customer base, and without making any individualized assessments to account for potential variation between individual Store Managers." *Id*. at *26-27.  Similarly, in *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005), the court held, "Defendant cannot, on the one hand, argue that all [of the employees in the position] at issue are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [class member] in order to determine whether that individual is exempt."  *Id*. at 614.

23

Accordingly, Defendants should not be permitted to argue an individualized inquiry is required as Defendants classified all ASMs as exempt employees without regard to their store location, store size, store volume, customer base and other factors.

### F.  Defendants' Claim that Its Potential Defenses Are Individualized Does Not Defeat Conditional Certification.

In opposing Plaintiff's motion, Defendants argue that an individualized inquiry will be required into its potential defenses.  (Opp., p. 25.)  Defendants assert that which exemption – executive or administrative – or combination of exemptions apply will differ by employee. However, courts have recognized that once a plaintiff has met his preliminary burden, conditional certification is appropriate and consideration of any individual issues should be deferred until the second stage of the analysis.  *See Francis*, 2008 U.S. Dist. LEXIS 83369, at *12.  Indeed, "various defenses available to defendant which appear to be individual to each plaintiff should be considered at the decertification stage, after the completion of discovery." *White*, 236 F.R.D. at 367 (citing *Thiessen v. General Electric Capital Corporation*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *see also Aguayo v. Oldenkamp Trucking,* U.S. Dist. LEXIS 22190, at *6-7 (E.D. Cal. Oct. 3, 2005) (during the "second stage" of analysis, court reviews several factors, including "the various defenses available to defendant which appear to be individual to each plaintiff").

Citing to *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999), Defendants also claim that, to the extent an employee claims that he or she did not predominantly perform exempt duties, it will show that the ASM is not fulfilling job expectations.  However, the California Supreme Court squarely held in *Sav-on Drug Stores v. Superior Court*, 34 Cal. 4th 319 (2004) that the analysis set forth in *Ramirez* does not preclude class certification.  *Id*. at 336. Moreover, the court found that "considerations such as 'the employer's realistic expectations'…

and 'the actual overall requirements of the job' are likely to prove susceptible to common proof." *Id*. at 336-37; *see also Tierno v. Rite Aid Corp*., 2006 U.S. Dist. LEXIS 71794, *26-27. Accordingly, Defendants' claim that it has individualized defenses to the claims of some class members fails to defeat conditional certification.

## VI.     PLAINTIFF'S PROPOSED COLLECTIVE ACTION IS MANAGEABLE.

Defendants argue that collective treatment of Plaintiff's claims is not superior because Plaintiff's proposed collective action is unmanageable.   However, at this stage in the proceedings, Plaintiff is not required to make a showing regarding the manageability of the action.   *See Young v. Cooper Cameron Corp*., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (for certification of a representative action, "no showing of numerosity, typicality, commonality and representativeness need be made.")   Furthermore, denying certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *Willix v. Healthfirst, Inc.*, 2009 U.S. Dist. LEXIS 114818 (E.D.N.Y. Dec. 3, 2009) (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F. 3d 124, 1140 (2d Cir. 2001) (granting plaintiff's Rule 23 motion for class certification)).   Finally, collective treatment will promote efficiency and is consistent with the purposes of the FLSA.   Therefore, Plaintiff's motion should be granted.

Defendants suggest that the pooling of claims is unnecessary here because, based on Plaintiff's deposition testimony regarding the number of uncompensated overtime hours he worked, the value of his claim exceeds $21,000.  (Opp., p. 26.)  However, class treatment is still superior where, as here, class members do not have a strong interest in individually controlling the litigation because it is unlikely a class member will bring an individual claim because the cost of an individual lawsuit would likely exceed any overtime wage recovery. *See Mascol v. E&L Transp., Inc.*, 2005 U.S. Dist. LEXIS 32634, *24 (E.D.N.Y. June 29, 2005).

Defendants also claim that adjudicating Plaintiff's claims as a collective action will not promote efficiency because the court will have to inquire into each claimant's circumstances. However, in rejecting a similar argument, the court in *Indergit* found that such an argument ignores the purposes of the FLSA. *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *32. According to the court, "The FLSA envisions a collective action process in which claims of similarly situated workers are adjudicated collectively rather than individually." *Id.* The court found that if it were to credit defendant's argument, no FLSA action that is premised upon an alleged misclassification under the executive exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual's claims in a separate lawsuit. *Id.* at *32-33. Additionally, as discussed above, Plaintiff has introduced evidence which indicates that common proof, including Defendants' corporate documents, exists and is likely to be highly probative concerning the merits of Plaintiff's claim.

Thus, Plaintiff's proposed collective action is manageable and conditional certification is appropriate.

## VII.   THE SCOPE AND MANNER OF PLAINTIFF'S PROPOSED NOTICE IS PROPER.

### A.     Notice Should Not Be Limited to the Stores at which Plaintiff Worked.

Defendant argues that if the Court grants conditional certification, Notice should be limited to the three stores at which Plaintiff worked (or to the stores at which Plaintiff and the other affiants worked). (Opp., p. 32.) However, there is no basis to limit Notice to employees at these stores.

The court rejected a similar argument in *Francis v. A&E Stores*. There, defendants objected to the nationwide certification of the conditional class, arguing that, if anything, the

26

class should be limited geographically to the district in which Plaintiff was employed.  *Francis*, 2008 U.S. Dist. LEXIS 83369, at *12-13.  The court found there was no basis to limit the scope of the conditional class as plaintiff had averred that she was told that the overtime policy was company policy, and nothing suggested that the practice was limited to certain stores or districts. *Id*. at *13.

Here, Plaintiff has submitted evidence – and Defendants have not disputed – that Defendants' policy to deny overtime compensation to ASMs is a nationwide policy.  In addition, as discussed above, Plaintiff has presented evidence, including nationwide job descriptions and the Management Training Guide, which show that Defendants exercised a high degree of control over the operation of the stores.  Thus, it is "highly likely" that ASMs, regardless of their location, perform similar duties and thus are similarly situated.  *See Indergit*, 2010 U.S. Dist. LEXIS 60202, at *17 (finding that internal Rite Aid documents, including nationwide job descriptions and the Rite Aid "Store Management Guide" demonstrated that Rite Aid's corporate management structure exercised a great degree of control over the operation of retail branches making it "highly likely that Rite Aid store managers – whether located in New York City or elsewhere – perform similar duties.").  Accordingly, Notice should be provided to ASMs nationwide.

**B.    Plaintiff's Proposed Methodology for Facilitating Notice and Request for Contact Information for Potential Class Members Are Proper.**

Contrary to Defendant's claims, Plaintiff's proposed methodology for facilitating notice and request for contact information for putative class members are proper.  Nevertheless, in the spirit of cooperation, Plaintiff is agreeable to Defendant's request that a third-party administrator be used to issue the Notice provided Defendant pays the costs associated with the use of the third-party administrator.  Additionally, Plaintiff agrees to limit his request for the contact

information for the putative class members to the names, last known mailing addresses, and email addresses of the putative class members.[6] Such requests are routinely granted by courts to facilitate providing notice to the potential plaintiffs. *See Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009) (finding plaintiffs were entitled to discovery of the names, last known email addresses, telephone numbers, dates of employment, and current or last known addresses of all hourly employees within the preceding three years); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (where defendant objected to plaintiff's request for production of names, last known mailing addresses, alternate addresses, telephone numbers, social security numbers, work locations and dates of employment of all "Covered Employees," noting privacy concerns, court ordered production of names, current or last known addresses and known email addresses).

Furthermore, Plaintiff's request for an order compelling Defendants to post the Notice "in a conspicuous location in all Marshalls stores" should be granted as this form of notice has routinely been approved in similar cases. *See Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) ("[Defendant] required to post continuous notice of this action and opt-in forms in a conspicuous location."); *see also Malloy v. Richard Fleishman & Assoc. Inc.*, 2009 U.S. Dist. LEXIS 51780, *11 (S.D.N.Y. June 3, 2009) (requiring defendant to post the notice of pendency "in each workplace where potential collective action members are employed"). Posting of the Notice, along with the other methods of dissemination requested by Plaintiff, is

---

[6] Plaintiff reserves the right to seek an order compelling Defendants to provide the social security numbers of potential opt-in plaintiffs to the third-party administrator in the event a significant number of Notices are returned as undeliverable in order to aid the administrator in conducting skip traces. *See Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *21 (finding plaintiff has not shown a need to disclose social security numbers, as he had not demonstrated that such information would aid in reducing the already low number of returned notices in *Damassia*).

necessary in order to facilitate notice and help ensure that class members can make an informed decision about whether to participate in the litigation.

Posting of the proposed Notice in Marshalls stores does not violate Marshalls' First Amendment Rights because it is narrowly tailored to serve the compelling state interest of disseminating notice. *See Pacific Gas & Electric Co. v. Public Utilities Com.*, 475 U.S. 1, 19 (1986) ("[The] order could be valid if it were a narrowly tailored means of serving a compelling state interest."). Defendants argue that Plaintiff's request for posting of the Notice is not narrowly tailored because the information in the Notice would be broadcast to more individuals than necessary; specifically to both non-class members and the general public alike. However, Plaintiff's request for an Order compelling posting of the Notice "in a conspicuous location" is the least restrictive means to achieving the necessary end of effectively disseminating notice, and allows for the placement of the Notice so it is not readily visible to the general public or patrons of Marshalls stores.

Thus, Plaintiff's request that Defendants post the Notice in all Marshalls stores is proper.

## VIII.   CONCLUSION

Based on the foregoing argument and authority, Plaintiff respectfully requests this Court issue an order:   (1) conditionally certifying this suit as a collective action; (2) ordering Defendants to produce, in a computer readable manner, the names, last known mailing addresses, and email addresses of all ASMs within the last three years; (3) authorizing a third-party administrator to send Notice to all ASMs within the last three years; and (4) ordering Defendants to post the Notice in all Marshalls stores.

Dated: July 30, 2010
      New York, New York

Respectfully submitted,


      /s/ Marc S. Hepworth
Marc S. Hepworth
Charles Gershbaum
David Roth
Hepworth, Gershbaum & Roth, PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016

Shawn Khorrami
Robert J. Drexler, Jr.
Launa Adolph
Khorrami, Pollard & Abir, LLP
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071