UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARTIN GUILLEN, individually and on behalf   :
of all others similarly situated,
                                             :   OPINION AND ORDER
                Plaintiff,                       09 Civ. 9575 (LAP) (GWG)
                                             :
        -v.-
                                             :
MARSHALLS OF MA, INC., a Delaware
corporation; MARMAXX OPERATING               :
CORPORATION, d/b/a MARMAXX GROUP, a
Delaware Corporation; THE TJX COMPANIES      :
INC., a Delaware corporation, and DOES 1
through 100, inclusive,                      :

                Defendants.                  :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Martin Guillen has sued Marshalls of MA, Inc., Marmaxx Operating Corporation d/b/a Marmaxx Group, and the TJX Companies Inc. (collectively "Marshalls") on the ground that Marshalls failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., while he was employed as an Assistant Store Manager ("ASM"). Guillen now moves to have this case conditionally approved as a collective action with notice being sent to all ASMs at Marshalls stores nationwide. For the reasons discussed below, Guillen's motion is denied without prejudice to an application seeking notification with respect to ASMs at a more limited number of Marshalls stores.

I.      BACKGROUND

Marshalls is one of the largest retailers in the world. See Defendants' Opposition to Plaintiff's Motion for Conditional Certification and Facilitation of Notice Pursuant to 29 U.S.C. § 216(b), filed July 9, 2010 (Docket # 21) ("Def. Motion") at 36. There are 820 Marshalls stores

in the United States, which are divided into separate geographic zones, regions, and districts. Affidavit of Maryann Parizo, filed July 9, 2010 (Docket # 22) ("Parizo Aff.") ¶¶ 3-4. Each Marshalls store has a store manager, at least two ASMs, and a number of coordinators and associates. Id. ¶ 9. Marshalls employs two types of ASMs: Operations ASMs and Merchandise ASMs. Id. ¶ 11. Marshalls classifies both Merchandise and Operations ASMs as exempt from the FLSA's overtime provisions. See Marshalls Assistant Store Manager - Exempt - Job Description (annexed as Ex. 2 to Parizo Aff.) ("Job Description") at *TJX4; Affidavit of Martin Guillen in Support of Plaintiff's Motion for Conditional Certification (annexed as Ex. 1 to Affirmation of Marc S. Hepworth in Support of Plaintiff's Motion for Conditional Certification, filed June 4, 2010 (Docket # 18) ("Hepworth Aff.")) ("Guillen Aff.") ¶ 3. Coordinators and associates are classified as non-exempt employees eligible for overtime. See Parizo Aff. ¶¶ 13, 14; Job Description at *TJX4.

      Guillen was employed by Marshalls as a Merchandise ASM from approximately September 2007 until September 2008. Guillen Aff. ¶ 2. He worked at two New York Marshalls stores: one located in Hartsdale and the other in the Bronx. Id. Guillen estimates that he worked approximately 60 to 70 hours a week and he asserts that he was not paid overtime for any hours worked over 40 hours a week. Guillen Aff. ¶¶ 3-4.

      According to the ASM job description, Marshalls ASMs are "[r]esponsible for assisting the Store Manager in managing the day-to-day operation of the store and customer service within the store . . . ." Job Description at *TJX4. Merchandise ASMs are required to "[m]anage[] in-store operations . . .[,] [o]versee[] the efficient operation of merchandising standards and presentation, operational functions and key areas such as frontline, layaway and cash office . . .[,] [and] [a]ssist[] in managing key areas such as maintenance and back room

functions." Guide to Store Management's and Coordinators' Duties & Responsibilities (annexed as Ex. 3 to Parizo Aff.) ("Guide to Store Management") at *TJX249. Operations ASMs are also required to "[m]anage[] in-store operations." These ASMs "[o]versee[] the efficient operation of key areas such as cash office, maintenance and backroom functions . . . [,] [and] [a]ssist[] in managing merchandising standards and presentations." Id. at *TJX250.

     Guillen asserts that, despite this job description, he in fact performed a number of non-exempt tasks, including "operating the cashier [sic], stocking, cleaning, rolling the racks from the stock room to the floor, displaying clothes in departments, unloading trucks, signage (displaying the tags on the merchandise), running merchandise and restocking clothes in the departments." Guillen Aff. ¶ 6. He "was also required to organize the store floors by . . . sweeping, mopping and removing garbage." Id. He states that he "cleaned windows, painted doors, painted walls, cleaned bathrooms[,] . . . erected display stands[,] . . . stocked shelves, cleaned the stock room, helped customers and checked prices." Id.; accord Complaint, filed Nov. 18, 2009 (Docket # 1) ¶ 20. Guillen asserts that "[t]he majority of [his] time as an Assistant Store Manager was spent performing non-exempt tasks." Guillen Aff. ¶ 7.

     Guillen has also submitted the affidavits of Nicole Archibald, Zobeyda Morales, and Ellen Ogaian, former ASMs at Marshalls, and of Lady Diana Santillian, currently employed as an ASM at Marshalls. See Affidavit of Nicole Archibald in Support of Plaintiff's Motion for Conditional Certification (annexed as Ex. 2 to Hepworth Aff.) ("Archibald Aff."); Affidavit of Zobeyda Morales in Support of Plaintiff's Motion for Conditional Certification (annexed as Ex. 3 to Hepworth Aff.) ("Morales Aff."); Affidavit of Ellen Ogaian in Support of Plaintiff's Motion for Conditional Certification (annexed as Ex. 4 to Hepworth Aff.) ("Ogaian Aff."); Affidavit of Lady Diana Santillian in Support of Plaintiff's Motion for Conditional Certification (annexed as

Ex. 5 to Hepworth Aff.) ("Santillian Aff."). Over the course of their careers at Marshalls, Archibald, Morales, and Ogaian were employed at five Marshalls retail stores located in the New York metropolitan area: three in the Bronx and one each in Port Chester and Hartsdale. See Archibald Aff. ¶ 2; Morales Aff. ¶ 2; Ogaian Aff. ¶ 2. The Hartsdale store is the same store at which Guillen worked. See Guillen Aff. ¶ 2; Ogaian Aff. ¶ 2. Santillian was employed at two New York Marshalls stores, one in Nanuet and one in Port Chester; she is currently employed at a Marshalls store in Bedford, New York. See Santillian Aff. ¶ 2.

Each of these ASMs state that they were required to perform many of the same non-exempt tasks that Guillen performed. See Archibald Aff. ¶ 6; Morales Aff. ¶ 6; Ogaian Aff. ¶ 6; Santillian Aff. ¶ 6. In addition, they state that "the majority of [their] time was spent performing non-exempt tasks," Archibald Aff. ¶ 7; see Morales Aff. ¶ 7; Ogaian Aff. ¶ 7; Santillian Aff. ¶ 7, and that they were not paid overtime, see Archibald Aff. ¶ 3; Morales Aff. ¶ 3; Ogaian Aff. ¶ 3; Santillian Aff. ¶ 3. Guillen and these other ASMs assert that most managerial responsibilities were handled by a store, district, or regional manager or other corporate employee, see Guillen Aff. ¶ 9; Archibald Aff. ¶¶ 9-10; Morales Aff. ¶ 9; Ogaian Aff. ¶ 9; Santillian Aff. ¶ 9, and that their own duties "were substantially similar to the duties and responsibilities of the hourly employees who received overtime compensation," Guillen Aff. ¶ 8; Archibald Aff. ¶ 8; see also Morales Aff. ¶ 8; Ogaian Aff. ¶ 8; Santillian Aff. ¶ 8.

With respect to whether ASMs perform non-exempt tasks at Marshalls stores other than those at which they were or currently are employed, Guillen, Archibald, Morales, Ogaian, and Santillian have provided the Court with identical statements in their respective affidavits. They assert that it is their "understanding" that all ASMs for all Marshalls locations were required to perform "substantially the same duties and responsibilities." Guillen Aff. ¶ 5; Archibald Aff.

4

¶ 5; Morales Aff. ¶ 5; Ogaian Aff. ¶ 5; Santillian Aff. ¶ 5.  They base their understanding on the fact that "Marshalls employed a high degree of standardized operational practices at [its] store[s] . . . ."  Guillen Aff. ¶ 5; Archibald Aff. ¶ 5; Morales Aff. ¶ 5; Ogaian Aff. ¶ 5; Santillian Aff. ¶ 5.  In addition, each states that "as an Assistant Store Manager, I often interacted with other Assistant Store Managers from different districts and regions in New York State . . .  Based upon my personal observations and [these] discussions . . . , I believe the duties and responsibilities of Assistant Store Managers are substantially similar from store to store."  Guillen Aff. ¶ 5; Archibald Aff. ¶ 5; Morales Aff. ¶ 5; Ogaian Aff. ¶ 5; Santillian Aff. ¶ 5.

For its part, Marshalls has provided the Court with affidavits from five ASMs currently employed at four Marshalls' stores in New York.  See Declaration of Johnny Nunez (annexed as Ex. B to Affidavit of Lisa A. Schreter in Support of Defendants' Opposition, filed July 9, 2010 (Docket # 23) ("Schreter Aff.")) ("Nunez Decl.") ¶ 4; Declaration of Luis Cepa (annexed as Ex. C to Schreter Aff.) ("Cepa Decl.") ¶ 3; Declaration of Sal Farruggia (annexed as Ex. D to Schreter Aff.) ("Farruggia Decl.") ¶ 3; Declaration of Mary Marciniak (annexed as Ex. E to Schreter Aff.) ("Marciniak Aff.") ¶ 2; Declaration of Bernard Gucciardo (annexed as Ex. F to Schreter Aff.) ("Gucciardo Decl.") ¶ 3.  Two of these ASMs were also formerly employed at seven other Marshalls stores, also in New York.  Farruggia Decl. ¶¶ 3-4; Gucciardo Decl. ¶ 3.  These ASMs describe in detail various managerial functions that they perform, including hiring and promoting, training, evaluating, and disciplining non-exempt employees.  See Nunez Decl. ¶¶ 34-64; Cepa Decl. ¶¶ 27-33; Farruggia Decl. ¶¶ 8-36; Marciniak Decl. ¶¶ 5-26; Gucciardo Decl. ¶¶ 11-39.  Additionally, two non-exempt coordinators, Alejandra Cano and Jodiann McKoy, have submitted affidavits attesting that ASMs in their stores perform supervisory and managerial functions.  See Declaration of Alejandra Cano (annexed as Ex. H to Schreter Aff.) ¶¶

5

4-11; Declaration of Jodiann McKoy (annexed as Ex. J to Schreter Aff.) ¶¶ 5-11.

Guillen seeks an order allowing this case to proceed as a collective action with the proposed class of persons to be notified consisting of all ASMs employed at all Marshalls stores nationwide. See Plaintiff's Motion for Conditional Certification of a Collective Action, filed June 4, 2010 (Docket # 17) ("Pl. Motion"); Hepworth Aff.; Plaintiff's Reply in Support of Motion for Conditional Certification of a Collective Action, filed July 30, 2010 (Docket # 25) ("Pl. Reply Motion"); Supplemental Affirmation of Marc S. Hepworth in Support of Plaintiff's Motion for Conditional Certification, filed July 30, 2010 (Docket # 26). Marshalls opposes this motion. See Def. Motion; Schreter Aff.; Parizo Aff.

II.   APPLICABLE LEGAL PRINCIPLES

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act.'" Reich v. N.Y. City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (alteration in original) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)).

The FLSA requires employers to pay overtime for "employment in excess of [40 hours per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). It exempts certain employees from its overtime requirements, including "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). To qualify for this exemption, the employee's "primary duty" must include the exercise of discretion and independent judgment with respect to matters of significance. See 29 C.F.R. § 541.200(a)(3). The Second Circuit has

held that "because the FLSA is a remedial act, its exemptions . . . are to be narrowly construed," and the "employer bears the burden of proving that its employees fall within an exempted category of the Act." Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991), cert. denied, 506 U.S. 905 (1992).

>  Section 216(b) of the FLSA provides, in pertinent part:
>
> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to mandate that notice be sent to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of s. 16(b) of the Act, 29 U.S.C. s. 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted). Orders authorizing notice are often referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification requirement. See, e.g., Damassia v. Duane Reade, Inc., 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006). The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the

sending of notice to potential class members." Myers v. The Hertz Corp., --- F.3d ----, 2010 WL 4227452, at *13 n.9 (2d Cir. Oct. 27, 2010) (internal quotation marks omitted).  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174).

The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made."  Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted). Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment . . . ." Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citations omitted).

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  Id. (citing cases); accord Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); LeGrand v. Educ. Mgmt. Corp., 2004 WL 1962076, at *1 (S.D.N.Y. Sept. 2, 2004); Harrington v. Educ. Mgmt. Corp., 2002 WL 1009463, at *1 (S.D.N.Y. May 17, 2002); Foster v. Food Emporium, 2000 WL 1737858, at *1 (S.D.N.Y. Apr.

26, 2000); Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citing Krueger v. N.Y. Tel. Co., 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.")). In some cases, "it may be appropriate . . . to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." Damassia, 2006 WL 2853971, at *3 (internal quotation marks and citations omitted); accord Davis v. Abercrombie & Fitch Co., 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) ("similarly situated" standard "may be satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation") (quoting Ayers v. SGS Control Servs., Inc., 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)) (additional citation omitted).[1]

---

[1] Some case law holds that "where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *3 (S.D.N.Y. Sept. 7, 2010). Other courts have criticized this approach. See, e.g., Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 162 n.12 (N.D.N.Y. 2008). It is not necessary to evaluate the defendants' evidence in this case, however, because, for the reasons described below, Guillen has not made the factual showing required to justify approval of a nationwide collective action.

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488, at *4; accord Pefanis, 2010 WL 3564426, at *4.

In dictum, the Second Circuit has characterized the two-step process described above as "sensible." Myers, — F.3d at —, 2010 WL 4227452, at *13.

III.   ANALYSIS

Guillen argues that he is similarly situated to Marshalls' ASMs nationwide because, "[d]espite [Marshalls'] 'idealized' job descriptions" and facially lawful standardized company policies, Marshalls' ASMs "in fact spent the majority of their work time performing non-managerial duties." Pl. Motion at 10; see also Guillen Aff. ¶ 7; Archibald Aff. ¶ 7; Morales Aff. ¶ 7; Ogaian Aff. ¶ 7; Santillian Aff. ¶ 7.  In other words, Guillen is not challenging the content of Marshalls' formal written policies.  Rather, he asserts that he was not actually given job duties in conformity with these policies.  As a result, to show that he and the putative plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated," Young, 229 F.R.D. at 54, it is not sufficient for Guillen to show that he and the proposed class of ASMs operated under the same job description.  Instead, he must show that he and the other ASMs were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description.

Guillen's attack is thus very different from an attack on a common formal policy.  In such cases, a court may "rely on the job description itself to demonstrate the scope and similarity of [the proposed plaintiffs'] daily activities," as long as the company's job description includes both managerial and non-managerial duties.  Nerland v. Caribou Coffee Co., 564 F. Supp. 2d

10

1010, 1019 (D. Minn. 2007) (emphasis omitted); see also Damassia, 2006 WL 2853971, at *5 n.9 (plaintiff's motion for court-authorized notice granted in misclassification case where defendant conceded uniform business policy with regard to ASMs); Young, 229 F.R.D. at 55-56 (misclassification case certified as a collective action where it was undisputed what work employees with a particular job title performed). Here, by contrast, Guillen must show that he is similarly situated to the proposed plaintiffs with respect to his allegation that he spent most of his time performing non-managerial tasks. See, e.g., Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1273 (M.D. Ala. 2004) ("the mere fact that [plaintiffs] have identified managerial tasks as being in common does not establish that the Plaintiffs are similarly situated for purposes of the alleged FLSA violation, which hinges on an allegation of the performance of non-managerial duties").

  Guillen's presentation on this point, however, is extremely thin. The evidence essentially consists of affidavits from five ASMs who experienced the allegedly illegal activities at nine of the 820 Marshalls stores nationwide. The nine stores are exclusively in the New York City metropolitan area. It is undisputed that the Marshalls stores are overseen by multiple "[d]istrict" and "[r]egional [m]anagers." Pl. Motion at 5-6; see Guillen Aff. ¶ 9; Archibald Aff. ¶ 9; Morales Aff. ¶ 9; Ogaian Aff. ¶ 9; Santillian Aff. ¶ 9; Parizo Aff. ¶¶ 2, 6-8. Thus, the fact that ASMs were responsible for performing non-exempt tasks in contravention of their written job requirements in nine stores in a particular metropolitan area, out of 820 stores nationwide, provides little basis to believe that Guillen is similarly situated to ASMs throughout the country with respect to his claim regarding ASM job responsibilities. Assuming arguendo that there is evidentiary value to the ASMs' repetition of the hearsay statement that other ASMs in "New York State" performed "substantially similar" work tasks, Guillen Aff. ¶ 8; Archibald Aff. ¶ 8;

Morales Aff. ¶ 8; Ogaian Aff. ¶ 8; Santillian Aff. ¶ 8,[2] such statements would be insufficient to show that plaintiffs are similarly situated to ASMs in all 50 states. Notably, Guillen stated in his deposition that he has no personal knowledge about how stores, other than those at which he was an employee, operated. See Deposition of Jose Martin Guillen (annexed as Ex. A to Schreter Aff.) at 336-37.

Guillen's conclusory statement that "Marshalls employed a high degree of standardized operational practices at [his] store including, the use of a standardized management training program, standardized employment policies and . . . an identical hierarchical management structure," Guillen Aff. ¶ 5; see also Archibald Aff. ¶ 5; Morales Aff. ¶ 5; Ogaian Aff. ¶ 5; Santillian Aff. ¶ 5, does little to add to the inference that ASMs nationwide were similarly situated to Guillen with respect to his claim that he was required to spend a majority of his time performing non-exempt tasks. There is no information provided as to the nature of these "standardized operational practices" and how they relate to the claim that Marshalls' ASMs are required to perform non-exempt tasks for a majority of their workweek in contravention of the ASM job description. To the extent that Guillen may be asserting that the management structure of Marshalls itself – involving regional and district managers of various sorts, see Guillen Aff.

---

[2] The Court accepts these hearsay statements for purposes of this motion inasmuch as our consideration of them does not affect the motion's outcome. The Court notes, however, that some case law holds that such statements are not admissible for purposes of approving a suit as a collective action. See, e.g., Richards v. Computer Scis. Corp., 2004 WL 2211691, at *2 (D. Conn. Sept. 28, 2004 ) (affidavits supporting motion for conditional certification must be based on "personal knowledge"); accord Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 219 n.4 (D. Conn. 2003); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 369 (E.D. Tenn. Mar. 21, 2006) (if hearsay were accepted, "affidavits submitted would not be any more probative than the bare allegations in the complaint, and the requirement of factual support would be superfluous").

¶¶ 5, 9; Archibald Aff. ¶¶ 5, 9; Morales Aff. ¶¶ 5, 9; Ogaian Aff. ¶¶ 5, 9; Santillian Aff. ¶¶ 5, 9 – justifies a nationwide collective action, this inference is simply not supported by reason as there may be vast differences in the practices of individual stores across the country. Essentially, plaintiff's argument on this point boils down to the proposition that where there is a corporate management structure that applies to all regions of the country – as is likely true for many, if not most, companies that operate nationally – any single employee may plausibly assert that employees throughout the country are similarly situated with respect to that employee's day-to-day job activities even if those job activities contravene the company's stated requirements.

Finally, Guillen and the other affiants make reference to the fact that they "received training regarding" certain apparently non-exempt tasks during the standardized management training program. Guillen Aff. ¶¶ 10, 11; Archibald Aff. ¶¶ 11, 12; Morales Aff. ¶¶ 10, 11; Ogaian Aff. ¶¶ 10, 11; Santillian Aff. ¶¶ 10, 11. They do not say, however, that they were instructed in the training program to spend their work hours actually performing such tasks and, indeed, the voluminous management training materials they attach, see Assistant Manager Training Program (annexed as Ex. A to Archibald Aff.); Management Training Program (annexed as Ex. A to Morales Aff.); Management Training Program Materials (annexed as Ex. A to Santillian Aff.), do not support such a conclusion.[3]

The absence of information as to employees nationwide renders this case similar to Baum

---

[3] In a similar vein, Guillen argues that the mere fact that Marshalls classified the ASM position as non-exempt means that Marshalls should not be permitted to argue that plaintiff is not similarly situated to all ASMs. See Pl. Reply Motion at 22-24. But carried to its logical conclusion, this argument would mean that any employee of a corporation who asserts that he performs non-exempt work necessarily meets the threshold showing that his suit should proceed as a collective action with the class of plaintiffs being all employees nationwide with the same job title. We do not believe, however, that such an allegation is sufficient to meet even the "modest factual showing" required to conclude that all such employees are similarly situated.

v. Shoney's Inc, 1998 WL 968390 (M.D. Fla. Dec. 3, 1998), in which the court refused to approve a collective action for employees of the defendant restaurant chain in eleven states because plaintiffs had provided only "general statements within their own affidavits" that the challenged practices occurred in restaurants outside of their county; see also Morales v. Plantworks, Inc., 2006 WL 278154, at * 3 (S.D.N.Y. Feb. 2, 2006) (conditional certification denied on the ground that plaintiffs had "offered nothing of evidentiary value" to show that other employees were the victims of the same violations of law).  In Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346 (E.D.N.Y. 2008), the court rejected the employer's argument that the differing circumstances of employees at the particular Coney Island location where plaintiff worked justified denying conditional certification.  But the Court accepted the company's argument that certification was not appropriate as to all stores in Brooklyn on the ground that plaintiff had not shown that he was similarly situated to "individuals who worked at a number of different locations, and under a number of different managers." Id. at 355.  In Laroque, there was arguably stronger evidence of similarity than exists here, inasmuch as the plaintiff asserted that an employee at another store informed him that she had been the victim of the same illegal practices, plaintiff had worked at a different store in Brooklyn where the illegal practices occurred, and two managers had actually informed plaintiff that the company committed the same illegal practices in all Brooklyn stores.  See id.  After noting that defendant had produced an affidavit of one of the managers denying that the conversation took place and stating that the company could not verify that the other named employee existed, the court concluded that it could not "justify certifying a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support." Id. at 356.

  We do not conclude that Guillen has failed to show that he is similarly situated to ASMs

nationwide merely because there are factual differences between Guillen's situation and that of the proposed class members. We thus respectfully disagree with the reasoning, though not necessarily the result, in Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, to the extent the court refused to grant collective action status in a case involving misclassification because "the proof in [the] case [was] specific to the individual . . . ." Id. at 220. After all, employees raising FLSA claims will almost always differ in some factual respects. The problem here, rather, is that there is virtually no basis on which to conclude that ASMs nationwide are similarly situated to Guillen with respect to his allegation that he spent the majority of his time performing non-managerial tasks.

Guillen asserts that this case is similar to that in Indergit, 2010 WL 2465488, in which the court conditionally approved notice to assistant store managers at Rite Aid stores nationwide in a case where the plaintiff alleged that they were performing mostly non-managerial duties. Id. at *10. But in Indergit, there was evidence that the company had attempted "to raise profits by decreasing the hours worked by hourly employees and transferring their job duties to Management." Id. at *2. Thus, there was evidence that Rite Aid had a "national policy" that required plaintiff, along with all other assistant managers, "to perform those tasks formerly being performed by . . . non-exempt employees." Id. In Damassia, 2006 WL 2853971, another case relied on by plaintiff, the defendant corporation admitted that "relevant business practices with respect to assistant night managers were uniform among its stores" and that one could "draw accurate conclusions about assistant managers company wide by looking at assistant managers in" the particular locality at issue. Id. at *5 (internal quotation marks omitted); accord Francis v. A & E Stores, Inc., 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (granting a motion for court-authorized notice where the employer had admitted that "all" employees with the job title

15

performed "basically the same duties"). [4]

In presenting evidence on the appropriateness of granting collective action status, the plaintiff's burden may be "very limited," Young, 229 F.R.D. at 55 (citing cases), and require only a "modest factual showing," id. at 54 (internal quotation marks and citations omitted), but the burden is not non-existent and the factual showing, even if modest, must still be based on some substance.  Here, plaintiff's showing does not meet even this relatively low threshold.  Because plaintiff has not shown that he is similarly situated to ASMs throughout the United

---

[4] Other cases relied on by plaintiff are similarly distinguishable.  See, e.g., Zivali v. AT & T Mobility LLC, 646 F. Supp. 2d 658, 660 (S.D.N.Y. 2009) (employees nationwide were subject to a specific timekeeping system that "systematically failed to fully account for the hours worked by non-exempt employees"); Parks v. Dick's Sporting Goods, Inc., 2007 WL 913927, at *1 (W.D.N.Y. Mar. 23, 2007) (court was presented with "numerous affidavits from Golf Pros formerly employed by defendant, that the PGA Golf Pros employed at defendant's various retail outlets during the relevant period were treated in accordance with a centralized policy, and had similar job duties" and the employer later reclassified the employees as non-exempt); Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 106 (D. Conn. 2007) (employer viewed the ASM position in a common light regardless of store location and plaintiff had demonstrated that there were only "minute factual variances" in the treatment of ASMs between store locations); Chowdhury v. Duane Reade, Inc., 2007 WL 2873929, at *4 (S.D.N.Y. Oct. 2, 2007) (defendants "conceded that the business practices at issue . . . [were] uniform among its stores"); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employer treated all carpet installers as independent contractors instead of as employees); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (authorizing notice to be sent to employees working at the one store at which plaintiff worked and where plaintiff had specifically identified employees who held the same or similar positions); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238-39 (N.D.N.Y. 2002) (authorizing notice to be sent to packing shed workers employed at a specific packing shed owned and/or operated by defendants); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 389 (W.D.N.Y. 2005) (granting certification where plaintiff did "not allege that he should have been paid overtime, or that he was improperly classified as exempt, but that he and other exempt employees' pay should not have been docked for partial-day absences or plant shutdowns"); Jacobsen v. Stop & Shop Supermarket Co., 2003 WL 21136308, at *4 (S.D.N.Y. May 15, 2003) ("defendant's own payroll records [could] be read as evidence that" trainees and back-up managers received "no overtime payment for any . . . hours worked beyond forty hours a week," and plaintiff had presented evidence demonstrating that managers were similarly situated to these employees); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308, 309 (S.D.N.Y. 1998) (employer admitted that it had violated "various labor laws")

States with respect to his claim that the FLSA has been violated, the Court will not grant collective action status as to this group. This ruling is without prejudice, however, to a future application based on the current record that seeks notification with respect to ASMs at a more limited group of Marshalls stores.

Conclusion

For the foregoing reasons, Guillen's motion for conditional certification of this suit as a nationwide collective action (Docket # 17) is denied.

SO ORDERED.

Dated: November 16, 2010
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

States with respect to his claim that the FLSA has been violated, the Court will not grant collective action status as to this group. This ruling is without prejudice, however, to a future application based on the current record that seeks notification with respect to ASMs at a more limited group of Marshalls stores.

Conclusion

For the foregoing reasons, Guillen's motion for conditional certification of this suit as a nationwide collective action (Docket # 17) is denied.

SO ORDERED.

Dated: November 16, 2010
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge